IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Criminal No.:  05-246-03 (RMC) |
| | : | |
| v. | : | |
| | : | |
| **PELES FRANCISCO,** | : | |
| | : | |
| Defendants. | : | |
| | : | |

## OPPOSITION TO MOTION TO SUPPRESS STATEMENTS AND TANGIBLE EVIDENCE

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes the defendants' motion to dismiss the indictment.  In support of its opposition, the United States relies on the following points and authorities and such other points and authorities as may be cited at a hearing on this motion.

On August 2, 2005, in the early morning, law enforcement officers, led by agents from U.S. Immigration and Customs Enforcement ("ICE"), went to 754 Harvard St., NW, Washington, DC, to see if defendant Peles Francisco was at his residence, in the basement apartment of that building.[1] The officers knew that there was an outstanding arrest warrant (misdemeanor warrant, #M-835801) for the defendant because of his failure to appear, in 2001, in a D.C. Superior Court case.  ICE Special Agent Mark Leeper knocked on the basement apartment door and the defendant walked down the hallway to the door.  Agent Leeper identified himself and asked for permission to enter the

---

[1] Upon entering the basement door, there is a narrow hallway about 15 feet long and 4 feet wide that leads to a small bedroom.  There is a laundry room on one side of the hall and a staircase that leads to the residence upstairs.  The bedroom is essentially an efficiency apartment.  The bed is right in front of the bedroom door.  The bedroom also contained a kitchen and bathroom.  There was no closet, but there were several racks that were used to store clothing and other items.

apartment.[2]

The defendant allowed Agent Leeper and one or two other officers to enter. Agent Leeper immediately recognized the defendant as the subject of the outstanding arrest warrant, and he asked the defendant if he had any identification. The defendant said yes and walked to the bedroom, accompanied by Agent Leeper, to retrieve his wallet from a dresser. The defendant's girlfriend and infant child were still in bed. The defendant and agent walked back toward the front door and the defendant showed the agent a North Carolina driver's license bearing his photo and the name Aldebaran Rodriguez Guzman. The agent then inquired about the defendant's nationality, and the defendant admitted that he was a Mexican who was in the U.S. illegally. Agent Leeper informed the defendant that there was a warrant for his arrest and he was handcuffed.[3]

At that point, Agent Leeper advised the defendant of his Miranda rights in Spanish, reading from a card that he keeps with him. The defendant said that he understood his rights and he agreed to speak without an attorney being present. Agent Leeper asked the defendant if he could search the apartment and the defendant agreed. The agent also asked the girlfriend for consent to search the apartment and she also agreed. Agent Leeper then asked the defendant if any weapons were in the apartment and the defendant said there was a gun near the bed.

Before searching for the gun, Agent Leeper also asked the defendant's girlfriend if she would

---

[2] At different points during the encounter, both Agent Leeper and the defendant spoke to one another in Spanish and English.

[3] While Agent Leeper was dealing with Francisco, a female agent and another officer had gone into the bedroom to speak with the defendant's girlfriend. She admitted that she was in the U.S. illegally and she and the child were removed from the bedroom and allowed to sit on the staircase leading upstairs, which was just outside of the bedroom. She was never handcuffed or threatened during the encounter.

give her permission to search the room and she agreed that he could. Agent Leeper looked for the gun near the bed, but did not see it. As he searched, he heard the girlfriend say something to the defendant in Spanish. Then the defendant, who was still in the hallway, told the agent that his girlfriend had moved the gun. Agent Leeper allowed the girlfriend to point out where she had hidden the gun, and he found it wrapped in some jeans near the rack of clothing. The gun was a silver Taurus revolver loaded with four .38 special live rounds. When Agent Leeper returned to the defendant after finding the gun, the defendant told the agent, in English, that the gun was his, for his protection from the "blacks" in the neighborhood.

   Later, hoping to obtain the defendant's written consent to search the apartment, Agent Leeper asked another agent to read the defendant his rights to him again. When that agent did so, the defendant said that he wanted an attorney. Agent Leeper then instructed the agents to place the defendant in a transport car. He was not interviewed and he did not sign a written consent to search form. When a crime scene officer arrived to process the gun, the officers obtained the girlfriend's signature on a written consent to search form. (Although the defendant requested an attorney, he never revoked his original permission to search the apartment.) During their search of the apartment, the agents discovered numerous fake identity documents stored in two suitcases by the bed..

   The defendant now seeks to suppress the statements that he made during the encounter with the agents, as well as the illegal gun and identity documents that were recovered from his apartment. As discussed below, there is no reason to suppress any of this evidence.

A.  The defendant's statements should not be suppressed.

The bulk of the defendant's incriminating statements were made after he had been informed of his Miranda rights and waived them.[4]  After waiving his Miranda rights the defendant: gave his consent for the agents to search his apartment; informed the agents that there was a gun in the apartment; informed the agents that his girlfriend had moved the gun; and informed the agents that he owned the gun for his protection.

When the validity of a waiver of Miranda rights is challenged, the government is required to prove that the waiver was voluntary by a preponderance of the evidence.  Colorado v. Connelly, 479 U.S. 157, 168 (1986).  Although the validity of the waiver is to be determined on a case-by-case basis by examining the totality of the circumstances, North Carolina v. Butler, 441 U.S. 369, 374-375 (1979); United States v. McNeil, 433 F.2d 1109, 1112 (D.C. Cir. 1969), "[a]n express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of the waiver. . . ." Butler, 441 U.S. at 374-375; see also United States v. Yunis, 859 F.2d 953, 961 (D.C. Cir. 1988)(defendant of foreign nationality, who was in pain and seasick, nevertheless knowingly and voluntarily waived his Miranda rights).

In this case, the defendant was informed of his Miranda rights in Spanish, his native

---

[4] Prior to his arrest, the defendant informed the agents that his name is "Aldebaran Rodriguez Guzman," and he presented them with a North Carolina driver's license in that name. The defendant also admitted that he was in the U.S. illegally because he is a citizen of Mexico with no legal authorization to be here.  When he made those statements, the defendant had not yet been restrained or handcuffed.  Therefore, the statements were made before the defendant was formally arrested.  Since he was not yet in custody, the statements were not subject to the requirements of Miranda, and they should not be suppressed.  See Berkemer v. McCarty, 104 S.Ct. 3138, 3150-51 (1984)(driver detained and questioned during a traffic stop was not subjected to custodial interrogation); U.S. v. Calloway, 298 F.Supp.2d 39, 47-48 (D.D.C. 2003)(defendant not in custody for Miranda purposes when an interrogatory question was asked).

language, even though he also speaks and understands English. The defendant understood those rights and knowingly and voluntarily waived them. Although the defendant's foreign background is a factor to consider in deciding whether he knowingly waived his rights, see Yunis, 859 F.2d at 964, that factor is mitigated by the totality of the circumstances, that is, the defendant is an educated man who speaks and understands English; he is familiar with the criminal justice system, having been arrested previously; and he has lived in the U.S. for some period of time (since his North Carolina driver's license was issued in 2003). Moreover, the defendant's waiver of his Miranda rights was voluntary since there is no evidence that the law enforcement agents forced or coerced the defendant into waiving those rights. See Yunis, 859 F.2d at 966.

B. The defendant voluntarily consented to the search of his apartment.

Agent Leeper asked both the defendant and his girlfriend whether they would consent to a search of their apartment before agents conducted their searches and found the gun and illegal identity documents. The defendant claims that his consent was involuntary based upon false claims that the agents coerced his consent by threatening to arrest his wife and put his infant child into state custody. As the record will demonstrate, Agent Leeper simply asked the defendant and his girlfriend for their consent, and the gave it.

Consent need not be knowing or intelligent, but must only be voluntary, that is, not the product of coercive police behavior which overbears the will of the person giving consent. See Schneckloth v. Bustamonte, 412 U.S. 218, 225 (1973); United States v. Watson, 423 U.S. 411, 424 (1976)(defendant who was in custody gave valid consent to search his car; "the fact of custody alone has never been enough in itself to demonstrate a coerced confession or consent to search"). As described above, the totality of the circumstances in this case will demonstrate that the defendant

5

voluntarily consented to the search of his apartment, and therefore there is no basis for suppressing the gun and fraudulent documents that the search revealed.

WHEREFORE, the government respectfully requests that the defendant's motion to suppress statements and evidence be denied.

Respectfully submitted,

KENNETH L. WAINSTEIN
United States Attorney
Bar No.  #451058

By: _____
FREDERICK W. YETTE
Assistant United States Attorney
D.C. Bar No. #385391
Federal Major Crimes Section
555 4th Street, N.W., 4th Floor
Washington, D.C.  20530
(202) 353-1666
Frederick.Yette@usdoj.gov